UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RICARDO BRYAN,
FDOC Inmate #L00414,
     Plaintiff,

v.                        Case No. 3:21cv842/LAC/ZCB

TAMMY MATTHEWS, et al.,
     Defendants.
_____/

## **REPORT AND RECOMMENDATION**

This is a *pro se* prisoner civil rights case filed by Plaintiff Ricardo

Bryan under 42 U.S.C. § 1983. There are nine individual Defendants, all

of whom worked at the Okaloosa County Jail. Six are jail employees (the

"County Defendants"),[1] and three are medical personnel involved in the

---

[1] One of the nine individual Defendants is Lorinda McLaughlin who was the Food Service Director at the jail. Defendant McLaughlin was served on May 18, 2023, but she has not appeared. (Doc. 75). Plaintiff claims Defendant McLaughlin violated the First and Eighth Amendment by failing to accommodate his religious diet and providing substandard food. (Doc. 32 at 13-17). Although Defendant McLaughlin may be technically in default (Doc. 93), that does not prevent dismissal of the claims against her under 28 U.S.C. § 1915A(b)(1). *See United States v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006); (affirming dismissal of complaint against a defendant who was in default); *see also Judy v. Obama*, 601 F. App'x 620, 622 (10th Cir. 2015) (affirming dismissal of *pro se* complaint under 28 U.S.C. § 1915(e)(2) and refusing to enter default judgment against the defendant); 28 U.S.C. § 1915A(b)(1) (requiring courts to dismiss a

care of jail inmates (the "Medical Defendants"). Plaintiff has also named Okaloosa County as a Defendant.

The County Defendants have moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Doc. 64). The Medical Defendants have moved for summary judgment.[2] (Docs. 70, 71). Plaintiff has responded in opposition to both motions. (Docs. 72, 85). The Medical Defendants have replied (Doc. 87). For the reasons below, the Court recommends granting the motions and dismissing this case.

## I.    Background

Plaintiff has been imprisoned in the Florida Department of Corrections (FDOC) since 2003. (Doc. 71 at 2). During his FDOC incarceration, Plaintiff was temporarily housed at the Okaloosa County Jail from 2018 to 2021. (*Id.*). This § 1983 action involves events that

---

complaint if it is malicious or fails to state a claim).

[2] The Medical Defendants entitled their motion "Motion to Dismiss or for Summary Judgment" (Doc. 71). Because the Medical Defendants have supported their motion with matters outside the pleadings (Docs. 70-1, 70-2), the Court believes it is best to treat the motion as one for summary judgment under Fed. R. Civ. P. 12(d). The Court previously provided the parties with notice of its intent to treat the motion as one for summary judgment and provided them with an opportunity to present all material pertinent to the motion as required by Fed. R. Civ. P. 12(d). (*See* Doc. 73).

occurred while Plaintiff was incarcerated in the jail. (Doc. 32). The Medical Defendants are Susan Priddy, the Health Services Administrator (HSA), Nicholas Delgado, a physician, and Nisarg Parikh, a dentist. (*Id.* at 1-3). The County Defendants are jail employees Tammy Matthews, Melissa Roper, David Pratt, Melissa Roberts, and Christina Rogers. Plaintiff has also sued Okaloosa County itself. (*Id.*).

In his Fourth Amended Complaint, Plaintiff asserts Eighth Amendment claims of medical deliberate indifference against the Medical Defendants. He also asserts Eighth Amendment claims against the County Defendants for their alleged failure to protect him from an attack by another inmate and failure to provide adequate food. Additionally, Plaintiff claims that certain County Defendants violated his First Amendment rights by failing to consistently provide a religious diet and by interfering with his rights to free speech and access to the courts. Plaintiff claims that Okaloosa County itself is liable under § 1983 because the alleged constitutional violations resulted from the county's policies or customs. As for relief, Plaintiff seeks monetary damages.

In their motion for summary judgment, the Medical Defendants make two arguments. (Doc. 71). First, they argue Plaintiff's claims

should be dismissed because he failed to truthfully disclose his litigation history. (*Id.* at 6-8). Second, the Medical Defendants argue they are entitled to judgment as a matter of law because there are no genuine issues of material fact on Plaintiff's Eighth Amendment medical deliberate indifference claims. (*Id.* at 8-19).

In their motion to dismiss, the County Defendants make three arguments regarding the Fourth Amended Complaint. First, they argue that it fails to meet minimum pleading standards. (Doc. 64 at 5-6). Second, they argue that it fails to state a plausible claim. (*Id.* at 6-22). Third, they argue entitlement to qualified immunity. (*Id.* at 23-24).

## II. Plaintiff's Fourth Amended Complaint should be dismissed as malicious because he failed to truthfully disclose his litigation history.

The Medical Defendants first argue that this case should be dismissed as malicious because Plaintiff failed to truthfully disclose his litigation history on the complaint form. (Doc. 71 at 6-8). Under 28 U.S.C. § 1915A, a district court shall dismiss a prisoner's complaint if it is malicious. 28 U.S.C. § 1915A(b)(1). A complaint is "malicious when a prisoner misrepresents his prior litigation history on a complaint form requiring disclosure of such history and signs the complaint under

penalty of perjury. *Allen v. Santiago*, No. 22-11946, 2023 WL 5745494, at *1 (11th Cir. Sept. 6, 2023) (citation omitted). And the Eleventh Circuit has made clear that a prisoner's case may be dismissed without prejudice for misrepresenting litigation history on the complaint form. *See, e.g.*, *Burrell v. Warden I*, 857 F. App'x 624, 625 (11th Cir. 2021) (affirming dismissal where prisoner failed to identify two prior lawsuits on the complaint form).[3] Dismissal is appropriate even if the prisoner blames a lack of memory or a misunderstanding for his failure to truthfully disclose. *See id.* at 624-25 (affirming dismissal for failure to disclose even though prisoner claimed that he lacked full memory about the omitted lawsuit); *see also Redmon v. Lake Cnty. Sheriff's Office*, 414

---

[3] A raft of Eleventh Circuit cases say the same thing. *See, e.g.*, *Kendrick v. Sec'y, Fla. Dep't of Corr.*, No. 21-12686, 2022 WL 2388425, at *3 (11th Cir. July 1, 2022) ("A plaintiff's bad-faith litigiousness or manipulative tactics, which include lying about one's litigation history, warrant dismissal under § 1915"); *Rickerson v. Sec'y, Fla. Dep't of Corr.*, No. 21-12110-F, 2021 WL 6098415, at *1 (11th Cir. Nov. 2, 2021) (concluding dismissal of prisoner's complaint as malicious was warranted where plaintiff disclosed six state actions and two federal actions but failed to disclose additional state actions that related to his incarceration or conditions of confinement); *Sears v. Haas*, 509 F. App'x 935, 935-36 (11th Cir. 2013) (affirming dismissal of prisoner's complaint as malicious for abuse of judicial process where prisoner failed to disclose previously filed cases); *Jackson v. Fla. Dep't of Corr.*, 491 F. App'x 129, 132-33 (11th Cir. 2012) (same); *Shelton v. Rohrs*, 406 F. App'x 340, 340-41 (11th Cir. 2010) (same); *Hood v. Tompkins*, 197 F. App'x 818, 819 (11th Cir. 2006) (same).

F. App'x 221, 226 (11th Cir. 2011) (affirming dismissal for failure to disclose litigation history and concluding that prisoner's failure was not excused by his claimed misunderstanding of the form).

Here, Question C of Section VIII on the Court's complaint form asked Plaintiff if he had "filed any other lawsuit, habeas corpus petition, or appeal in **state or federal court** either challenging your conviction or relating to the conditions of your confinement." (Doc. 32 at 23). Plaintiff checked "YES" and identified one state case and six federal cases:

> ●*Bryan v. Dixon*, Case No. 2022-CA-208 (Bradford Cnty. Cir. Ct.) (state habeas corpus petition challenging close management status);
> ●*Bryan v. Okaloosa Cnty. Bd. of Cnty. Comm'rs*, Case No. 3:21cv17/MCR/MJF (N.D. Fla.) (federal lawsuit challenging conditions of confinement);
> ●*Bryan v. FDOC*, Case No. 0:10cv61329/JIC (S.D. Fla.) (federal habeas corpus petition challenging conviction in Broward County Circuit Court Case No. 2002-CF-2428);
> ●*Bryan v. FDOC*, Case No. 0:07cv61676/AJ (S.D. Fla.) (federal habeas corpus petition challenging conviction in Broward County Circuit Court Case No. 2001-CF-18211)
> ●*Bryan v. Matthews*, Case No. 3:21cv842/MCR/ZCB (N.D. Fla.) (instant lawsuit challenging conditions of confinement);
> ●*Bryan v. Inch*, Case No. 4:20cv357/TKW/EMT (N.D. Fla.) (federal habeas corpus petition challenging prison disciplinary proceedings);
> ●*Bryan v. Danio*, 3:21cv686/MCR/ZCB (N.D. Fla.) (federal lawsuit challenging conditions of confinement).

(*Id.* at 22-25).  Plaintiff identified two additional cases in his answer to Question B of Section VIII:

> ●*Bryan v. Matthews*, Case No. 2020-SC-1512 (Okaloosa Cnty. Small Claims Ct.) (state lawsuit challenging jail official's failure to correctly complete Plaintiff's inmate indigency form);
> ●*Bryan v. State*, 2018-CF-1425 (Okaloosa Cnty. Cir. Ct.) (state criminal case).

(*Id.* at 23).  Plaintiff also referenced two cases in his factual allegations:

*State v. Bryan*, No. 2002-CF-2428 (state criminal case in Broward Cnty. Cir. Ct.) and 2018-SC-2590 (state small claims action in Leon Cnty. Small Claims Ct.) (*Id.* at 17-19).  At the end of the complaint form, Plaintiff signed his name after the following statement: "I declare, under penalty of perjury, that all of the information stated above and included on or with this form, including my litigation history, is true and correct." (*Id.* at 25-26).

In support of their argument for dismissal, the Medical Defendants have attached a listing of Plaintiff's many court filings.  (Doc. 71 at 7 n.2; Doc. 70-2).  According to that list, Plaintiff failed to disclose the following lawsuits on the complaint form:

> ●*Bryan v. DOC*, Case No. 2005-CA-002742 (Leon Cnty. Cir. Ct.) (state action challenging prison disciplinary proceedings);
> ●*Bryan v. DOC*, Case No. 2006-CA-002414 (Leon Cnty. Cir. Ct.) (state action challenging prison disciplinary proceedings);

●*Bryan v. DOC*, Case No. 2012-CA-003960 (Leon Cnty. Cir.
Ct.) (state action challenging prison disciplinary proceedings).

(Doc. 70-2). As demonstrated in the state courts' orders of dismissal (see

attached), these lawsuits were state lawsuits relating to the conditions of

confinement. So, Plaintiff was required to list them on the complaint

form. He did not. Plaintiff has responded to the Medical Defendants'

motion by claiming that he "does not know his previous litigation

history," and "[t]here could be more filed litigation, that he is unaware

of." (Doc. 74 at 1). Plaintiff then listed his previously filed cases in an

effort to "update this Court [on] his litigation history." (*Id.*).

The prior litigation portion of the complaint form serves important

purposes. First, it assists the Court in determining whether the prisoner

is barred from proceeding *in forma pauperis* under the "three strikes"

provision in 28 U.S.C. § 1915(g). Second, it allows the Court to determine

whether an action is related to another lawsuit. Third, it enables the

Court to determine whether the case involves issues that have been

previously decided by another judge. These purposes are thwarted, and

the efficiency of the judicial system diminished, when a prisoner

misstates his litigation history on the complaint form.

8

Plaintiff's failure to accurately answer the questions on the complaint form is not excused by his prefacing the answer with the statement: "I might have more. I'm not sure of all of them." (Doc. 32 at 23). The Eleventh Circuit has previously rejected attempts to rely on such evasive qualifiers to avoid dismissal. *See Schmidt v. Navarro*, 576 F. App'x 897, 899-900 (11th Cir. 2014) (affirming dismissal for failure to disclose even though prisoner wrote "not to my memory" when answering questions regarding litigation history); *see also Burrell*, 857 F. App'x at 624-25 (affirming dismissal for failure to accurately disclose litigation history even though prisoner claimed that he lacked full memory about the omitted lawsuit).

When prisoners misrepresent their litigation on the complaint form, there should be consequences. As another judge on this Court has explained, "[i]f the requirement for prisoner plaintiffs to disclose their prior lawsuits is to serve its purpose, a plaintiff must provide accurate information. If word got around the prisons that inaccurate or incomplete information could be provided with no effective sanction, the form would serve little purpose. And word does get around the prisons." *See Rodriguez v. Inch*, No. 4:19cv191/RH/HTC, 2020 WL 3050231, at *1

9

(N.D. Fla. June 7, 2020). The Court is unwilling to excuse Plaintiff's failure to accurately disclose his litigation history.[4] That is especially warranted here given Plaintiff's history of doing the same thing. *See Bryan v. Okaloosa Cnty. Bd. Of Comm'rs., et al.*, Case No. 3:21cv17/MCR/MJF (N.D. Fla. Apr. 21, 2021) (dismissing case, two months before the filing of the current one, because Plaintiff failed to accurately disclose his prior litigation history).

---

[4] Permitting Plaintiff to disclose the lawsuits only *after* he was called out for his failure to disclose them would be the equivalent of overlooking his untruthfulness. *See Young v. Sec'y for Dep't of Corr.*, 380 F. App'x 939, 940-41 (11th Cir. 2010) (affirming dismissal and denial of an opportunity to amend his complaint to disclose lawsuits that should have been disclosed initially); *Hood v. Tompkins*, 197 F. App'x 818, 819 (11th Cir. 2006) (affirming dismissal where the plaintiff attempted to provide a full list of his prior cases after a magistrate judge recommended dismissal, and explaining that the district court was "correct to conclude that to allow [plaintiff] to then acknowledge what he should have disclosed earlier would serve to overlook his abuse of the judicial process"). Indeed, Plaintiff attempted to do the same thing in a prior case that another judge on this Court dismissed as malicious. (3:21cv17/MCR/MJF, Doc. 14). After the magistrate judge recommended dismissal based on Plaintiff's failure to disclose two cases, Plaintiff filed a "Motion for Leave to File an Amended and/or Supplement Complaint" and disclosed the two cases. (*Id.*). The district judge adopted the magistrate judge's recommendation, dismissed the case as malicious, and dismissed Plaintiff's motion to amend or supplement as moot. (3:21cv17/MCR/MJF, Doc. 15).

For the reasons above, Plaintiff has abused the judicial process by failing to accurately disclose his litigation history and dismissal for maliciousness is warranted under 28 U.S.C. § 1915A(b)(1). Lesser sanctions would be insufficient. *See, e.g.*, *Rickerson v. Sec'y, Fla. Dep't of Corr.*, No. 21-12110-F, 2021 WL 6098415, at *1 (11th Cir. Nov. 2, 2021) (affirming dismissal where *pro se* plaintiff failed to disclose prior state cases that challenged the conditions of his confinement); *see also Thompson v. Quinn*, No. 3:10cv74/MCR/CJK, 2011 WL 5873064 (N.D. Fla. Oct. 20, 2011) *adopted by*, 2011 WL 5873069 (dismissing prisoner's complaint for failing to disclose prior state cases). Accordingly, Plaintiff's Fourth Amended Complaint should be dismissed without prejudice as a malicious abuse of the judicial process under 28 U.S.C. § 1915A(b)(1).

Although the Court has recommended a without prejudice dismissal, it is possible that the statute of limitations could bar Plaintiff from refiling some of his claims.[5] The Court is uncertain whether that

---

[5] In such a case, the without prejudice dismissal would effectively be a with prejudice dismissal of those particular claims. The Eleventh Circuit has cautioned that district courts should not dismiss claims without prejudice when that dismissal would effectively be a dismissal with prejudice unless there is "a clear record of delay or willful conduct and that lesser sanctions are inadequate to correct such conduct." *Rickerson*, 2021 WL 6098415, at *1.

would be the case because there are exceptions to the statute of limitations and it can sometimes be difficult to ascertain when a claim has accrued for statute of limitations purposes.[6]  It appears as though there are four claims in the Fourth Amended Complaint that could be potentially barred by the statute of limitations.  But, in any event, those four claims are due to be dismissed with prejudice on the merits for the reasons explained below.  Put another way, those four claims are subject to dismissal with prejudice on an alternative basis aside from Plaintiff's failure to accurately disclose his litigation history.[7]

---

[6] The statute of limitations for § 1983 claims brought in federal courts within Florida is typically four years.  *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008); Fla. Stat. § 95.11(3).

[7] To the extent that Plaintiff asserts a failure to protect claim against Defendants Pratt, Roberts, Roper, Matthews, and the County based upon events that occurred prior to April 2020, Plaintiff has not alleged facts that state a claim to relief that is plausible on its face.  Plaintiff alleges that in the months preceding April 2020, he reported problems with particular cell mates, and the individual Defendants responded by moving Plaintiff to a different cell and, in one instance, placing a "keep separate" order between Plaintiff and the inmate ("JM"). (Doc. 32 at 3-5; Doc. 85-1 at 2-4).  Plaintiff's allegations do not permit a reasonable inference that any individual Defendant failed to act to alleviate a substantial risk of serious harm, or that the County had a persistent or widespread policy or custom that caused constitutional injury. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *see also Ireland v. Prummell*, 53 F. 4th 1274, 1290 (11th Cir. 2022) ("[P]roof of a single incident of unconstitutional activity is not sufficient to demonstrate a policy or custom for purposes of § 1983 liability.").  For these reasons,

III.  **Plaintiff's mental health treatment claim, prescription eyeglasses claim, access to courts claim, and free speech claim all lack merit.**

The only claims in the Fourth Amended Complaint that Plaintiff could be possibly barred from re-filing by the statute of limitations are: (1) the Eighth Amendment claim that the Medical Defendants failed to provide mental health treatment; (2) the Eighth Amendment claim that the County and the Medical Defendants Delgado and Priddy failed to provide prescription eyeglasses; (3) the First Amendment claim that the County and Defendants Matthews, Roper, and Rogers denied him access to the courts; and (4) the First Amendment claim that the County and Defendants Matthews, Roper, and Rogers violated his right to free speech. As explained below, those claims all fail on the merits.

A.  **Deliberate indifference to mental health needs claim against the Medical Defendants**

Plaintiff alleges that his Eighth Amendment rights were violated because the Medical Defendants were deliberately indifferent to his mental health needs. More specifically, Plaintiff claims that in 2010 he

---

Plaintiff's allegations do not state a failure to protect claim to the extent he asserts one based upon events that occurred prior to April 2020. *Estate of Owens v. GEO Group, Inc.*, 660 F. App'x 763, 769 (11th Cir. 2016).

was diagnosed with major depressive disorder, antisocial personality disorder, adjustment disorder with depressed mood, PTSD, and anxiety disorder. (Doc. 32 at 10). He alleges he has previously taken psychiatric medication "on and off" for those disorders. (*Id.*). According to Plaintiff, while incarcerated at the jail the Medical Defendant's denied him mental health treatment, including psychiatric medication. (*Id.*). The Medical Defendants assert that they are entitled to summary judgment on this claim. (Doc. 71 at 16-17). The Court agrees.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it would change the outcome of the litigation. *Id*. At the summary judgment stage, the Court views the evidence "in the light most favorable to the non-movant." *Samples on Behalf of Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988).

The central summary judgment question is "whether the evidence presents a sufficient disagreement to require submission to a jury or

14

whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The nonmoving party bears the burden of coming forward with sufficient evidence on each element of each claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A mere "scintilla" of evidence is insufficient to meet that burden. *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004). Although *pro se* pleadings are liberally construed, "a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990) (citations omitted).

Prison officials violate the Eighth Amendment[8] when they act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). That includes mental health needs. *Greason v. Kemp*, 891 F.2d 829, 834 (11th Cir. 1990). To prevail on a

---

[8] Plaintiff may have technically been a pre-trial detainee in the jail's custody, even though he was serving a state sentence at the time. Regardless of his status as a pre-trial detainee or a convicted prisoner, the legal standard is the same under the Fourteenth Amendment (for pre-trial detainees) and the Eighth Amendment (for convicted prisoners). *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020).

deliberate indifference claim, a plaintiff must satisfy two prongs—one objective, one subjective. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Satisfying the objective prong requires a plaintiff to show an "objectively serious medical need." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (cleaned up). A medical need is objectively serious if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention—that, if left unattended, poses a substantial risk of serious harm." *Id*. (cleaned up).

To satisfy the subjective prong, a plaintiff must prove that prison officials (1) had subjective knowledge of a risk of serious harm and (2) disregarded that risk (3) by conduct that was more than mere negligence. *Id*. The plaintiff's burden of establishing the objective and subjective prongs is "steep." *Id*.

According to Plaintiff's medical records, a non-party nurse performed an initial medical intake when Plaintiff arrived at the jail on May 29, 2018. (Doc. 85-1 at 38; Doc. 70-1 at 39-41). Plaintiff reported that he had "depressive, anxiety adjustment, and antisocial disorders," but he indicated that he was not taking any medication and had no

current mental health complaints. (Doc. 32 at 3; Doc. 70-1 at 39, 41).[9]

Plaintiff denied having suicidal thoughts or thoughts of harming himself

or others. (Doc. 70-1 at 39, 41).

The next day, Plaintiff had a mental health intake appointment

with a non-party clinician. (Doc. 85-1 at 38). The clinician noted that

Plaintiff was transferred from the FDOC with no mental health history.

(*Id.*). Plaintiff reported no mental health concerns and denied suicidal

ideations or hallucinations. (*Id.*). The clinician observed no evidence of

psychosis. (*Id.*). The clinician educated Plaintiff on the process for

requesting mental health services. (*Id.*). During a security screening

with a non-party nurse on September 28, 2018, Plaintiff reported a

history of depression. (*Id.*). The nurse scheduled Plaintiff to see a mental

health clinician. (*Id.*).

---

[9] Defendants dispute that Plaintiff reported a mental health history during intake. (Doc. 71 at 17). On Plaintiff's intake screening record, the intake nurse recorded that Plaintiff stated he had no mental health history. (Doc. 70-1 at 40-41). Although there is a factual dispute as to whether Plaintiff reported a mental health history, the dispute is not material for purposes of summary judgment because assuming that Plaintiff reported a mental health history to the intake nurse, this fact does not affect the outcome of the question of whether any named Medical Defendant subjectively knew that Plaintiff had a serious need for mental health treatment.

Plaintiff saw a non-party mental health clinician four days later, on October 2, 2018. (*Id.*). Plaintiff denied suicidal thoughts or hallucinations. (*Id.*). Plaintiff reported a history of depression but said, "I'm not on any meds. I'm doing counseling. I see her about every 2 weeks." (*Id.*). The mental health clinician noted no evidence of psychosis and also noted that Plaintiff was calm and engaged during their encounter. (*Id.*). The clinician noted that Plaintiff was goal oriented; his speech was clear; he had no delusional thought content, and he maintained good eye contact. (*Id.*). The clinician educated Plaintiff on the process for requesting mental health services if he needed them. (*Id.*).

Over one year later, on December 19, 2019, Plaintiff submitted a health services request for prescription eyeglasses and mentioned that the lack of glasses was causing depression. (Doc. 85-1 at 9). A member of the medical staff (Plaintiff does not say who) referred Plaintiff's concerns of depression to the mental health staff. (*Id.*). When Plaintiff was transferred from the jail back to the FDOC, he was prescribed psychiatric medication. (Doc. 32 at 10).

Considering the evidence from Plaintiff's medical records, no reasonable juror could find that any of the Medical Defendants (Health

Services Administrator Priddy, Dr. Delgado, or Dr. Parikh) subjectively knew that Plaintiff required mental health treatment but was not getting it. Plaintiff has come forward with no evidence showing that he informed any of the Medical Defendants of his need for mental health treatment nor is there any record evidence showing that Plaintiff was experiencing obvious mental health issues that would have been noticeable in the absence of a complaint by Plaintiff. Indeed, the medical records show the opposite—Plaintiff denied the need for treatment and did not appear to be experiencing any mental health issues. The medical records do not show that Plaintiff ever requested mental health treatment or psychiatric medication from any of the Medical Defendants. Thus, because Plaintiff has failed to come forward with more than a scintilla of evidence showing the Medical Defendants had subjective knowledge of his mental health needs and disregarded those needs, they are entitled to summary judgment on this claim. *See Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) ("Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records."); *see also Bailey v. Lewis*, 2022 WL 20225439, at *8 (N.D. Ga. July 28, 2022), *adopted by* 2022 WL

19

20225429 (granting summary judgment where medical records clearly contradicted the plaintiff's deliberate indifference claim).

## B. Deliberate indifference claim against Medical Defendants Delgado and Priddy regarding Plaintiff's eyeglasses

Plaintiff claims that Medical Defendants Delgado and Priddy were deliberately indifferent to his need for an eye examination and prescription eyeglasses. (Doc. 32 at 9-10). Defendants Delgado and Priddy have moved for summary judgment on this claim. For the reasons below, the Court agrees that summary judgment is warranted.

It is undisputed that Plaintiff did not have eyeglasses when he arrived at the jail on May 29, 2018.[10] Upon arrival, Plaintiff told the intake nurse (a non-party) that he needed eyeglasses (Doc. 32 at 9). The nurse, however, did not note this in Plaintiff's intake screening records. (Doc. 70-1 at 39-41; Doc. 85-1 at 38). On September 30, 2018 (four months after Plaintiff's arrival), Plaintiff submitted an administrative grievance concerning eyeglasses. (Doc. 85-1 at 10, 21-22). Defendant Priddy responded that Plaintiff could arrange for a family member to either

---

[10] Plaintiff had prescription eyeglasses in the FDOC, but he says that FDOC staff took his glasses when they moved him to the jail. (Doc. 32 at 9; Doc. 85-1 at 8, 20, 42).

deliver his eyeglasses or mail them to the jail. (*Id.*).

On October 7, 2018, Plaintiff completed a health services request regarding his need for eyeglasses to see distances. (Doc. 85-1 at 33). There is no indication that Plaintiff's request was received by the medical department. (*Id.*). In September of 2019 Plaintiff asked a nurse (a non-party) for an examination by an optometrist, but the nurse responded that he likely would not be allowed to leave the jail for such a non-emergent exam. (Doc. 85-1 at 9). On December 10, 2019, Plaintiff submitted a health services request requesting glasses because his eyes hurt, he had headaches, and his eyes were dry. (Doc. 85-1 at 34). Plaintiff was seen by a nurse (a non-party) the next day, but he was not provided with glasses. (*Id.* at 32).

Later that month, Plaintiff submitted a health services request stating that his lack of eyeglasses was causing pain and depression. (Doc. 85-1 at 9). A member of the medical staff (a non-party) responded that Defendant Delgado had evaluated Plaintiff on January 9, 2020 and noted no immediate concerns. (*Id.*). On February 3, 2020, Plaintiff submitted another health services request stating that he was farsighted and his eyes were "scratched up." (Doc. 85-1 at 9). A member of the medical staff

(a non-party) notified Plaintiff that he was placed on the list to be seen by a doctor. (*Id.*).

On July 24, 2020, Plaintiff submitted a health services request stating that he needed an eye exam "due to poor vision/injury to eye." (Doc. 85-1 at 31). A member of medical staff (a non-party) triaged Plaintiff and advised him that eye exams were performed annually. (*Id.* at 30-31). Plaintiff's medical records indicate a diagnosis of myopia (nearsightedness) on June 22, 2021. (Doc. 70-1 at 49). On August 17, 2021, Defendant Priddy told Plaintiff to provide a copy of his previous eyeglass prescription or have his family deliver his eyeglasses to the jail. (Doc. 32 at 10). On September 24, 2021, Plaintiff provided medical staff with a copy of his previous prescription from 2017. (Doc. 32 at 10; Doc. 85-1 at 9). He received eyeglasses with that prescription in December of 2021. (Doc. 32 at 9-10). Plaintiff was returned to an FDOC prison later that month. (Doc. 18).

Several months after Plaintiff's return to an FDOC prison, he was examined by an optometrist. (Doc. 85-1 at 41, 42). His prescription had changed since 2017, but he still had only mild myopia (nearsightedness) (which actually improved in one eye) and mild astigmatism (in only one

eye instead of both).  (*Id.*).  Both eyes required magnification that was not previously prescribed.[11]  (*Id.*).

According to Plaintiff, the delay in providing glasses impaired his ability to recognize dangerous inmates, read, use electronics such as the law library kiosk, watch television, watch birds and insects, see hazards such as wet and elevated areas, and participate in sports.  (Doc. 32 at 10; Doc. 85 at 10; Doc. 85-1 at 22).  Plaintiff also states that he fell twice during his three and a half-year stay at the jail, once in April 2021 and again in November 2021.  (Doc. 85-1 at 22, 35-37).  Plaintiff reported pain in his wrist (April fall) and arm (November fall) and requested x-rays both times.  (*Id.* at 35-37).  He was evaluated by medical staff.  (*Id.*). There is no evidence that he required further treatment.

Defendants argue that the need for eyeglasses to address nearsightedness, without more, is not a serious medical need for Eighth Amendment purposes.  (Doc. 71 at 15).  Plaintiff contends that the existence of the optometrist's prescription, alone, is sufficient to satisfy the serious medical need standard.  (Doc. 85-1 at 10, 22).

_____

[11] It appears Plaintiff aged from forty-one years old when he arrived at the jail to forty-five years old when he left the jail. (*See* Doc. 85-1 at 28 (referencing Plaintiff's date of birth).

Defendants' argument finds ample support in precedent. There are cases from courts across the country holding that mild to moderate nearsightedness (like that experienced by Plaintiff) is not a serious medical need for Eighth Amendment purposes. *See, e.g.*, *Bellah v. McGinnis*, 42 F.3d 1388, 1994 WL 664926, at *1 (6th Cir. 1994) (unpublished table decision) (holding that plaintiff's "moderate nearsightedness does not constitute a serious medical need"); *Parrott v. St. Tammany Parish Jail Med. Dep't*, No. 13-5207, 2014 WL 582810, at *6 (E.D. La. Feb. 13, 2014) (holding that "common nearsightedness" that caused "minor difficulties…did not rise to the level of serious medical need for constitutional purposes"); *Salinas v. Hamilton*, No. A-14-CA-1073-LY, 2014 WL 7405711, at *1 (W.D. Tex. Dec. 30, 2014) (concluding that plaintiff's condition was "nothing more than common near-sightedness" and not a serious medical need). Even when mild to moderate nearsightedness causes the minor symptoms that Plaintiff complained of in his medical requests (i.e., eye pain, headaches, dry eye, and scratchiness), many courts have refused to find a serious medical need for Eighth Amendment purposes.[12]

---

[12] *See, e.g.*, *Davidson v. Scully*, 155 F. Supp. 2d 77, 89 (S.D.N.Y. 2001)

Generally, courts have found that vision problems rise to the level of a serious medical need only where a plaintiff experienced severe symptoms of vision impairment or suffered severe functional limitations

("Plaintiff's blurry vision, headaches, and tearing are not conditions that produce degeneration or extreme pain and are not a sufficiently serious condition under the Eighth Amendment."); *Lipscomb v. Corbin*, No. 7:22-cv-00511, 2023 WL 5215245, at *3-4 (W.D. Va. Aug. 14, 2023) (holding that inmate's myopia, "stabbing pain" in right eye, inability to see five feet in front of him, double vision, blurry vision in both eyes, and headaches did not demonstrate a serious medical need); *Johnson v. White*, No. 9:14-cv-00715(MAD/DJS), 2016 WL 3920242, at *3 (N.D. N.Y. July 15, 2016) (finding no serious medical need where prisoner had moderate myopia that led to headaches, eye strain, inability to see scenery outside exercise area, and inability to clearly identify other inmates); *McIntosh v. Malueg*, No. 09-C-1106, 2011 WL 3684777, at *6 (E.D. Wis. Aug. 23, 2011) (holding that need for glasses, blurriness, and eye pain was not a serious medical need); *Freshwater v. Brankle*, No. 1:04-CV-2-TS, 2005 WL 3159151, at *6 (N.D. Ind. Nov. 28, 2005) (finding no serious medical need where plaintiff alleged he needed glasses to "alleviate headaches, blurred vision, and watery and burning eyes when reading" but he could still function well enough to handwrite grievances); *Glass v. Orleans Parish Crim. Sheriff*, No. Civ.A. 04-3353, 2005 WL 1501019, at *3 (E.D. La. June 22, 2005) (holding that moderate nearsightedness was not a serious medical need); *Swaissi v. Cotten*, No. 3-01-CV-1607-D, 2002 WL 492905, at *2 (N.D. Tex. Mar. 28, 2002) (dismissing claim where plaintiff alleged inability "to focus and to see short distances" without his glasses, which made reading, writing, and watching television difficult, but he was still able to read and write well enough to file four lawsuits and prepare pleadings in those suits). *But see Rudolph v. Barber*, No. 12-CV-263-WS-M, 2013 WL 1084291, at *7 (S.D. Ala. Jan. 29, 2013) (assuming that plaintiff's headaches, blurry vision, and eye pain represent a serious medical need for purposes of the summary judgment motion because the "symptoms could indicate a serious or life-threatening problem").

without glasses. *See, e.g.*, *Koehl v. Dalsheim*, 85 F.3d 86, 87-88 (2d Cir. 1996) (holding that prisoner had serious medical need where he was nearly blind, had severe double vision and significant loss of depth perception causing him to fall or walk into objects, and physician had prescribed specialized glasses); *Benter v. Peck*, 825 F. Supp. 1411, 1416–17, 1419 (S.D. Iowa 1993) (holding that legally blind plaintiff had a serious medical need).

Here, the evidence in the record shows that Plaintiff had mild to moderate nearsightedness. This is not a case of a severely visually impaired person who lacks the ability to function without strong prescription eyeglasses. Instead, Plaintiff's claimed functional limitations were minor and comparable to the complaints in the cases cited above where courts have refused to find a serious medical need.

A final circumstance where courts have found that an inmate's visual impairment meets the serious medical need standard is where the delay in providing prescription glasses caused the inmate to suffer lasting or severe impairments. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of [the]

delay in medical treatment." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002). "[D]elay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation." *Id. a*t 1187-88.

Plaintiff alleges that the delay in providing eyeglasses caused permanent damage to his vision (Doc. 85-1 at 10, 22), but there is no evidence of that in the record. The 2022 optometrist's prescription shows that Plaintiff's vision changed from 2017 to 2022, but not that it severely worsened. (*Id.* at 41-42). Even if the changes could be characterized as deterioration, such slight deterioration does not rise to the level of demonstrating a serious medical need. *Roddy v. McBride*, 59 F.3d 173, 1995 WL 377062 (7th Cir. 1995) (unpublished table decision) (holding that minor deterioration of inmate's vision and need for magnification was not a serious medical need). Moreover, there is no "verifying medical evidence in the record to establish the [alleged] detrimental effect," *Hill*, 40 F.3d at 1188, was caused by the delay in Plaintiff receiving eyeglasses. Nothing in the record shows that the slight deterioration and need for magnification was attributable to the lack of prescription eyeglasses

while Plaintiff was at the jail, as opposed to other factors such as aging or genetics.  Accordingly, summary judgment is appropriate because no reasonable juror could find that Plaintiff's nearsightedness was a serious medical need for Eighth Amendment purposes.

## C.  The County is entitled to dismissal of Plaintiff's deliberate indifference claim regarding eyeglasses

Plaintiff has also sued the County for deliberate indifference regarding the failure to provide an eye examination and eyeglasses.  The County has moved to dismiss, arguing that Plaintiff has not stated a plausible claim for relief under § 1983.  (Doc. 64 at 11).  As discussed above with respect to the Medical Defendants, Plaintiff's deliberate indifference claim fails because his nearsightedness was not a serious medical need.  Accordingly, his deliberate indifference claim against the County regarding his eyeglasses and lack of an eye exam should be dismissed.[13]

---

[13] To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  In reviewing a motion to dismiss, the Court accepts the complaint's factual allegations as true and construes them in the light most favorable to the plaintiff. *Id*. at 679.

**D.    The County Defendants are entitled to dismissal of Plaintiff's access to courts claim**

Plaintiff claims that the County Defendants violated his First Amendment right to access the courts.  (Doc. 32 at 17-20).  He alleges the County did not have an adequate law library program.  (*Id.* at 17).  He further alleges that the jail's law library kiosk did not permit inmates to obtain copies of court decisions; instead, inmates were required to request copies from Defendant Matthews.  (*Id.* at 18).  And, according to Plaintiff, Defendant Matthews would only provide one court decision at a time and sometimes did not provide Plaintiff with the decisions he requested.  (*Id.*).  Plaintiff also alleges that Defendant Rogers programmed the kiosk to "shut down," it also defaulted to Texas law and would turn off after a period of inactivity.  (*Id.*).  When the kiosk would turn off due to inactivity, it caused Plaintiff to lose his research unless he "saved" the screen.  (*Id.*).  Additionally, Plaintiff claims the jail did not have proper forms or supplies (such as 10x12 envelopes).    (*Id.* at 17-18).  (*Id.*).  Because of these various supposed issues, Plaintiff says he suffered prejudice in two court cases, Leon County Case No. 2018-SC-2590 and Okaloosa County Case No. 2020-SC-1512-C.  (Doc. 32 at 19-20; Doc. 25-1 at 6-9, 11-12, 16-18).  Both of those cases were small claims court actions.

(Doc. 32 at 18-19; Doc. 25-1 at 11-12).

The County Defendants seek dismissal of Plaintiff's access to courts claims because the small claims court actions do not qualify for First Amendment protection. (Doc. 64 at 19-20). The individual County Defendants also claim qualified immunity. (*Id*. at 23-24). They state there is no dispute that they were acting within the scope of their discretionary authority when they allegedly committed the acts of which Plaintiff complains. (*Id*. at 24). The County Defendants contends that Plaintiff has not shown that any individual County Defendant violated a constitutional right; nor has he shown that the right was "clearly established" at the time of the alleged violation. (*Id*.).

Interference with an inmate's access to the courts may be a violation of the First Amendment and can be actionable under § 1983. *Lewis v. Casey*, 518 U.S. 343 (1996). To successfully state an access-to-courts claim, an inmate must articulate how he was actually injured or prejudiced with respect to the case he was litigating. *Id*. at 349; *Wilson v. Blankenship*, 163 F.3d 1284, 1290-91 (11th Cir. 1998) (recognizing an inmate must have evidence of deterrence, "such as denial or dismissal" of the case he was pursuing to prevail on an access to courts claim). The

First Amendment protection only applies to specific types of cases: criminal direct appeals, post-conviction matters, and civil rights actions seeking "to vindicate basic constitutional rights." *Lewis*, 518 U.S. at 354-55 (cleaned up). Moreover, an access to courts claim requires a plaintiff to establish that the case he was unable to pursue because of the defendant's interference had arguable merit. *Id*. at 353 n.3.

Plaintiff's first small claims court action, Leon County Case No. 2018-SC-2590, does not qualify for protection under the First Amendment because it did not challenge a conviction or sentence, or qualify as a civil rights action seeking "to vindicate basic constitutional rights." *Id*. at 354-55. As Plaintiff describes, that case was a "tort claim conversion suit" seeking monetary damages for a correctional officer's loss/confiscation of items of Plaintiff personal property valued at $99.00. (Doc. 32 at 19). It is well settled that a plaintiff's small claims court personal property action does not qualify for constitutional protection because such an action is not a criminal appeal, a post-conviction challenge, or a civil rights action. *See Allen v. Raemisch*, 603 F. App'x 682, 684 (10th Cir. 2015) (holding that a prisoner's right of access to the courts does not apply to small claims actions); *Smith v. Craven*, 61 F.

App'x 159, 162 (6th Cir. 2003) ("The right of access does not extend to a prisoner's property claim filed in state court."); *Blue v. Patarroyo*, No. 08-22672, 2009 WL 347792, at *8 (S.D. Fla. Feb. 11, 2009) (dismissing prisoner's access to courts claim because his state civil lawsuit was "not a criminal appeal, a post-conviction proceeding, or a civil rights action").

Plaintiff states the other court case in which he was injured was Okaloosa County Case No. 2020-SC-1512-C. (Doc. 32 at 18-20). Plaintiff describes that case as another small claims court action where he asserted an "access to court claim" against Defendant Matthews. (*Id.* at 18-19). Although the Court doubts this small claims court action qualifies for constitutional protection, it arguably could be construed as "civil rights action." If it were construed that way, it still fails for two other reasons. First, Plaintiff has not described the underlying claim "well enough to. . .show that the arguable nature of the underlying claim is more than hope." *Cunningham v. District Atty's Office*, 592 F.3d 1237, 1271 (11th Cir. 2010) (cleaned up).[14]

---

[14] The Court takes judicial notice of the state court's order of dismissal in Case No. 2020-SC-001512-C, which shows that the court dismissed the case on March 4, 2021 because Plaintiff failed to obtain service of process (*see* attached order). The state court's dismissal was without prejudice (*see id.*), so Plaintiff was not foreclosed from re-filing his claim.

Second, Plaintiff has failed to plausibly connect the dismissal of the small claims court action to the conduct of the County Defendants. Plaintiff vaguely alleges "Defendants failed to provide assistance in filing the pleadings, and to the proper courts, on the proper form." (*Id.* at 19). He also alleges that Defendant Matthews "and/or other staff" failed to provide him with a signed inmate account statement to support his IFP motion, which caused the clerk of court to reject his motion. (*Id.* at 19-20). Plaintiff submitted two documents in support of his claim. (Doc. 25-1 at 14, 16-18). One of them is an inmate request that Plaintiff submitted to jail staff requesting "Account Print Out." (*Id.* at 14). A staff member with initials "MW" responded that Plaintiff's account information was attached to the grievance response, but the staff member noted, "we will not certify records unless ordered by subpoena." (*Id.*).

Plaintiff's second document is a Clerk's Determination of Prisoner Indigency Pursuant to § 57.085, Fla. Stat. (2004), filed in the small claims case. (*Id.* at 16-18). The clerk of court notified Plaintiff on August 21, 2020, that a determination of indigency could not be made until Plaintiff either paid the filing fee or provided a photocopy of his inmate account statement signed by a jail official. (*Id.*).

Plaintiff has not tied any named Defendant to the inadequacy of his affidavit of indigency. The initials "MW" do not correlate with any individual County Defendant. As for the County itself, the response to Plaintiff's inmate request indicates that the County had a custom or policy of not providing certified records unless required to do so by subpoena. But, the clerk of court did not require a certified copy of Plaintiff's account statement—only a signed one was required. Plaintiff has failed to plausibly allege that the County had a policy of prohibiting an official signature on an inmate account statement. If "MW"—who Plaintiff has not established is a County policymaker—misapplied the County's policy in this instance and precluded an official signature from being affixed to Plaintiff's inmate account statement, that is an error attributable to the staff member, not the County. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (explaining that the "official policy requirement [of *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978)] was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible"); *see also McDowell v. Brown*, 392 F.3d 1283, 1290

(11th Cir. 2004) (recognizing that the policy or procedure requirement for municipal liability "prevents the imposition of liability based upon an isolated incident").

At the end of the day, Plaintiff's factual allegations do not permit a reasonable inference that County Defendants Matthews, Rogers, Roper, or the County itself caused him to suffer denial or dismissal of any court action that qualified for First Amendment protection.[15] *See Juiffre v. Broward Sheriff's Office*, 717 F. App'x 886, 888 (11th Cir. 2017) (stating that an access to courts claim requires an inmate to show "actual injury in the pursuit of specific types of nonfrivolous cases"). Thus, Plaintiff has

---

[15] Plaintiff has complained about the law library services available and the quality of the jail's legal research kiosk. But Plaintiff has failed to plausibly show that the alleged shortcomings in the jail's law library "impeded [his] pursuit of a nonfrivolous, post-conviction claim or civil rights action." *Miller v. Donald*, 132 F. App'x 270, 272 (11th Cir. 2005) (cleaned up). For example, he has alleged that the legal research kiosk "default[ed] to Texas case law" (Doc. 32 at 18), but he has not explained how that directly impacted his ability to litigate a non-frivolous claim. And Plaintiff has complained that the jail failed to provide him free copies of legal materials. (*Id.*). It is well settled, however, that the right to access the courts "does not encompass a requirement that prison officials provide a prisoner with free, unlimited access to photocopies." *Logue v. Chatham Cnty. Detention Ctr.*, 152 F. App'x 781, 784 (11th Cir. 2005) (affirming dismissal of access to courts claim that was based on allegation that prison officials refused to provide free copies of court documents relating to the prisoner's habeas corpus petition).

not stated a plausible access to courts claim against the County Defendants.

Moreover, even if Plaintiff had stated a plausible First Amendment claim against one or more of the individual County Defendants, he has not overcome their qualified immunity defense. The qualified immunity defense shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is proper to grant a motion to dismiss on qualified immunity grounds when the complaint "fails to allege the violation of a clearly established constitutional right." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (citation omitted).

To benefit from qualified immunity, a defendant must have been acting within the scope of his or her discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Each of the individual County Defendants state that they were employed by Okaloosa County, working at the jail, and acting within the scope of their discretionary authority when the alleged acts

occurred. (Doc. 64 at 24). Plaintiff argues that this is not a sufficient demonstration that their conduct fell within the scope of their discretionary functions. (Doc. 72 at 11). The Court finds that the County Defendants have shown that they were acting within the scope of their discretionary authority.

The burden now shifts to Plaintiff to show (1) that Defendant violated a constitutional right, and (2) that the right was "clearly established." *Davis v. Waller*, 44 F.4th 1305, 1312 (11th Cir. 2022). In the Eleventh Circuit, a right can be clearly established in one of three ways. First, "a materially similar case has already been decided." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). Second, there is a "broader, clearly established principle" that "should control the novel facts in this situation." *Id*. Third, the "case fits within the exception of conduct which so obviously violates th[e] constitution that prior case law is unnecessary." *Id*.

None of the cases cited by Plaintiff is materially similar to this case because none of them concerned an inmate's pursuit of a small claims action. (Doc. 72 at 9-10, 11-12). Nor is there a broader clearly established principle that clearly controls this type of situation. Additionally, none

of the conduct that Plaintiff attributes to the individual County Defendants was "so obviously" unconstitutional. Plaintiff thus has not satisfied his burden of overcoming Defendants' qualified immunity defense. *See Butler v. Norman*, 766 F. App'x 924, 928-29 (11th Cir. 2019) (determining that corrections officers were entitled to qualified immunity on a prisoner's access to courts claim). For the reasons discussed, the County Defendants are entitled to dismissal of Plaintiff's access to courts claim.

### E.   Dismissal is warranted on Plaintiff's free speech claim

Plaintiff also claims that the County Defendants violated his right to free speech by returning court orders without notifying him, opening court orders outside his presence, and providing him with copies of court orders but retaining the originals. (Doc. 32 at 18-20). A prison official violates the First Amendment right of free speech if he opens a prisoner's attorney mail when the prisoner is not present. *Mitchell v. Peoples*, 10 F.4th 1226, 1231 (11th Cir. 2021); *Al-Amin v. Smith*, 511 F.3d 1317, 1334 (11th Cir. 2008).

Plaintiff alleges that the County Defendants interfered with his mail to and from the state courts. He does not allege that any County

Defendant opened, read, or retained mail between Plaintiff and his attorney. Unlike communications between a prisoner and his attorney, communications between a prisoner/litigant and a court are not confidential or privileged. Thus, Plaintiff does not allege that any County Defendant interfered with the type of legal mail that is entitled to constitutional protection, namely, communications with an attorney. So, the free speech claim against the County Defendants should be dismissed for failure to state a claim. *See Allen v. St. John*, 827 F. App'x 1002, 1005-06 (11th Cir. 2020) (affirming dismissal of prisoner's free speech claim because mail from the court was not the type of communication that is protected by the First Amendment).

## IV. Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that:

1. The Medical Defendants' motion for summary judgment (Doc. 71) and the County Defendants' motion to dismiss (Doc. 64) be **GRANTED**. Plaintiff's Fourth Amended Complaint (Doc. 32) should be **DISMISSED without prejudice** as a malicious abuse of the judicial process under 28 U.S.C. § 1915A(b)(1) for failure to accurately disclose litigation history. To the extent that the following claims would be barred

from refiling by the statute of limitations (and effectively be with prejudice dismissals), they should be alternatively dismissed with prejudice because they lack merit:

      i.    Plaintiff's Eighth Amendment claims against the Medical Defendants for alleged failure to provide mental health treatment;

      ii.    Plaintiff's Eighth Amendment claims against the Medical Defendants, and Okaloosa County for alleged failure to provide eyeglasses;

      iii.    Plaintiff's First Amendment claims against the individual County Defendants and Okaloosa County for alleged denial of access to the courts; and

      iv.    Plaintiff's First Amendment claims against the individual County Defendants and Okaloosa County for alleged interference with Plaintiff's rights to free speech.

2.    The Clerk of Court be directed to enter judgment accordingly and close this case.

At Pensacola, Florida, this 19th day of December 2023.

*/s/ Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

## **Notice to the Parties**

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.